## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| M.L.Z., | | |
| *Plaintiff,* | | CIVIL ACTION |
| v. | | No. 2:25-cv-5479 |
| KRISTI NOEM, Secretary of the U.S. Department of Homeland Security; ANGELICA ALFONSO-ROYALS, Acting Director of U.S. Citizenship and Immigration Services; and JOSEPH E. KERNAN, Director of U.S. Citizenship and Immigration Services Asylum Vetting Center, | | |
| *Defendants.* | | |

## <u>ORDER</u>

AND NOW, this _____ day of _____ 2025, upon

consideration of Defendants' opposition to Plaintiff M.L.Z.'s motions for preliminary

injunction and temporary restraining order, and any response thereto, it is hereby

ORDERED that Plaintiff's motions for preliminary injunction and temporary

restraining order are DENIED.


BY THE COURT:


_____

MICHAEL M. BAYLSON
United States District Court Judge

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

M.L.Z.,

*Plaintiff,*

v.

KRISTI NOEM, Secretary of the U.S.
Department of Homeland Security;
ANGELICA ALFONSO-ROYALS,
Acting Director of U.S. Citizenship and
Immigration Services; and JOSEPH E.
KERNAN, Director of U.S. Citizenship
and Immigration Services Asylum
Vetting Center,

*Defendants.*

CIVIL ACTION

No. 2:25-cv-5479

## RESPONSE IN OPPOSITION TO
## PLAINTIFF'S MOTIONS FOR PRELIMINARY
## INJUNCTION AND TEMPORARY RESTRAINING ORDER

As set forth in the accompanying memorandum of law, Kristi Noem, as

Secretary of the U.S. Department of Homeland Security, Angelica Alfonso-Royals,

as Acting Director of U.S. Citizenship and Immigration Services, and Joseph E.

Kernan, as Director of U.S. Citizenship and Immigration Services Asylum Vetting

Center ("Defendants"), oppose plaintiff M.L.Z.'s motion for preliminary injunction

(ECF No. 10) and motion for temporary restraining order (ECF No. 15).

1

Respectfully submitted,

DAVID METCALF
United States Attorney

/s/ Gregory David [SRB]
GREGORY B. DAVID
Assistant United States Attorney
Chief, Civil Division

/s/ Anthony St. Joseph
ANTHONY ST. JOSEPH
ISAAC J. JEAN-PIERRE
Assistant United States Attorneys
United States Attorney's Office
Eastern District of Pennsylvania
615 Chestnut Street, Suite 1250
Philadelphia, PA 19106
Phone: (215) 861-8267 (St. Joseph)
         (215) 861-8372 (Jean-Pierre)
Email: Anthony.StJoseph@usdoj.gov
         Isaac.Jean-Pierre@usdoj.gov

Dated: October 10, 2025

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| M.L.Z., | |
| *Plaintiff,* | CIVIL ACTION |
| v. | No. 2:25-cv-5479 |
| KRISTI NOEM, Secretary of the U.S. Department of Homeland Security; ANGELICA ALFONSO-ROYALS, Acting Director of U.S. Citizenship and Immigration Services; and JOSEPH E. KERNAN, Director of U.S. Citizenship and Immigration Services Asylum Vetting Center, | |
| *Defendants.* | |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S
OPPOSITION TO PLAINTIFF'S MOTIONS FOR PRELIMINARY
INJUNCTION AND FOR TEMPROARY RESTRAINING ORDER**

## I.    INTRODUCTION

In 2021, the southern border of the United States was overwhelmed with aliens crossing the border between Mexico and the United States. Plaintiff was among those unlawfully crossing the border between ports of entry. He was intercepted by border patrol officers. Plaintiff claimed to border officers that he feared returning to Nicaragua. The Department of Homeland Security (DHS) placed Plaintiff in expedited removal and informed him that he would be scheduled for a credible fear interview. Plaintiff was released from custody pending that interview. Due to the extraordinary volume of cases, it has taken DHS years to work through the backlog of cases. Now, Plaintiff brings this claim asking the Court to remove

him from expedited removal and compel United States Citizenship and Immigration Services (USCIS) to adjudicate his application for asylum, in violation of immigration law.

The Court should dismiss this complaint because it lacks jurisdiction over an alien in expedited removal. Further, the relief sought is not available because USCIS lacks authority to adjudicate Plaintiff's asylum application—he is in expedited removal proceedings and has been since his unlawful entry in 2021. Finally, Plaintiff is getting the appropriate process under expedited removal, which affords limited review and no federal district court review if his credible fear interview determines he lacks a credible fear. If he is found to have a credible fear, Plaintiff receives a Notice to Appear and begins 8 U.S.C. § 1229a removal proceedings, where he can present his asylum claim and can appeal as necessary— up to and including a petition for review with the circuit court.

## II.    LEGAL BACKGROUND

Congress has determined that aliens can apply for asylum in one of three circumstances. First, an alien may file an asylum application with USCIS, provided that such alien is not in any kind of removal proceedings. 8 U.S.C. § 1158(a)(1); 8 C.F.R. § 208.1(a)(1). Second, if the alien is subject to removal proceedings under 8 U.S.C. § 1229a, the alien may file an asylum application as a defense to removal before the immigration judge. *See* 8 U.S.C. § 1229a(c)(4); 8 C.F.R. §§ 208.2(b),

1208(b).[1] Third, aliens subject to expedited removal under 8 U.S.C. § 1225(b) who indicate an intention to apply for asylum or express a fear of persecution, or torture, or fear of return to their country must be referred to an asylum officer for an interview to determine whether the alien has a credible fear of persecution. *See* 8 U.S.C. § 1225(b)(1)(A)(ii); 8 C.F.R. § 235.3(b)(4).

An alien who is "physically present in the United States" but not in removal proceedings may affirmatively apply for asylum with USCIS. 8 C.F.R. § 208.2(a)(1)(i). Affirmative asylum applications are adjudicated by specially trained asylum officers after a non-adversarial interview. *Id*. § 208.9. If USCIS decides not to grant asylum, and the alien is removable under the immigration laws, USCIS serves the alien with a Form I-862, Notice to Appear (NTA), and files the NTA with the immigration court to initiate removal proceedings before an immigration judge. At that time, USCIS also refers the asylum application to the immigration judge for adjudication in removal proceedings. 8 C.F.R. §§ 208.14(c)(1); 1208.14(c)(1).

Whenever DHS places an alien in removal proceedings under 8 U.S.C. § 1229a—whether by ICE or U.S. Customs and Border Protection (CBP) as an enforcement measure or by USCIS after consideration of an affirmative asylum application—a claim of asylum is treated as a defense to removal. 8 C.F.R. §

---

[1]    To demonstrate eligibility for asylum, an alien must demonstrate that he meets the definition of a refugee.  8 U.S.C. § 1158(b)(1)(A). A "refugee" is an individual who is "unable or unwilling to return to, and is unable or unwilling to avail … himself of the protection of" his country of nationality (or if stateless, last habitual residence) "because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion."  Id. § 1101(a)(42).

208.2(b); 1003.14(a). The immigration judge has exclusive jurisdiction over any asylum application filed by an alien in removal proceedings under 8 U.S.C. § 1229a. *Id*. §§ 208.2(b), 1003.14(b),[2] 1208.2. If the immigration judge denies a claim for asylum, the applicant can appeal the decision to the Board of Immigration Appeals (BIA). *Id*. § 1003.38(a). If still dissatisfied, the applicant can petition for review with the appropriate federal circuit court. *See* 8 U.S.C. § 1252(a)–(b).

In 1996, Congress passed the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA"), Pub. L. No. 104-208, Div. C, Tit. I, 110 Stat. 3009-546, creating the third path for asylum. *Vartelas v. Holder*, 566 U.S. 257, 262 (2012). As part of the IIRIRA, Congress established the expedited removal process to ensure that the Executive Branch could "expedite removal of aliens lacking a legal basis to remain in the United States." *Kucana v. Holder*, 558 U.S. 233, 249 (2010); *see also DHS v. Thuraissigiam*, 591 U.S. 103, 106 (2020) ("[When Congress enacted [IIRIRA], it crafted a system for weeding out patently meritless claims and expeditiously removing the aliens making such claims from the country."). Under the expedited removal process, aliens who lack valid entry documentation or make material misrepresentations, shall be "order[ed] ... removed from the United States without further hearing or review unless the alien indicates either an intention to apply for asylum ... or a fear of persecution." 8 U.S.C. § 1225(b)(1)(A)(i). "The purpose of these provisions is to expedite the removal from the United States of

---

[2]    For both affirmative and defensive asylum claims, the application must be filed within one year of the applicant's arrival in the United States, unless the alien can establish an exception to the one-year filing deadline. 8 U.S.C. § 1158(a)(2)(B).

aliens who indisputably have no authorization to be admitted to the United States, while providing an opportunity for such an alien who claims asylum to have the merits of his or her claim promptly assessed by officers with full professional training in adjudicating asylum claims." H.R. Conf. Rep. No. 828, 104th Cong., 2d Sess. 209 (1996).[3]

Accordingly, an alien who is placed in expedited removal may claim a fear of persecution, torture, or return to their country of origin or an intent to apply for asylum. When this happens, an asylum officer must interview the alien to determine whether he has a "credible fear of persecution." 8 U.S.C. § 1225(a)(ii), (b)(1)(B)(v); *see also* 8 C.F.R. § 208.30(d), (e); *Thuraissigiam*, 591 U.S. at 109–11 (describing the credible fear process).[4]

If the asylum officer finds that the alien has a credible fear, the alien is issued an NTA and is placed in removal proceedings under 8 U.S.C. § 1229a, during which the alien may apply for asylum defensively. *See* 8 C.F.R. §§ 208.30(e)(5), (f), *see also* 8 U.S.C. § 1225(b)(1)(B)(ii).

---

[3]    In establishing procedures for expedited removal, Congress was concerned with abuses of the asylum system. At the time IIRIRA was enacted, "[t]housands of smuggled aliens arrive[d] in the United States each year with no valid entry documents and declare[d] asylum." House Report at 117. Without the procedures for expedited removal, those aliens would be placed in full removal proceedings under 8 U.S.C. § 1229a and "could reasonably expect that the filing of an asylum application would allow them to remain indefinitely in the United States." *Id*. at 118. Congress designed the expedited removal system to bypass the more "cumbersome and duplicative" procedures for aliens "who arrive in the United States with no valid documents." *Id*. at 107.

[4]    A credible fear exists when there is a "significant possibility" that the alien could establish eligibility for asylum in a full hearing before the immigration court. *See* 8 U.S.C. § 1225(b)(1)(B)(v), (iii)(II).

If the asylum officer finds that the individual lacks a credible fear, that finding "shall not become final until reviewed by a supervisory asylum officer." 8 C.F.R. § 208.30(e)(8). If the supervisory asylum officer agrees, the asylum officer "shall" provide the alien a "written notice of decision" that informs the alien that he can request review by an immigration judge. *See* 8 C.F.R. §§ 208.30(g)(1), 235.3(b)(4)(i)(C); *see also* 8 U.S.C. § 1225(b)(1)(B)(iii)(III). If so requested, the IJ reviews *de novo* the asylum officer's determination. 8 C.F.R. § 1003.42(d). If the IJ finds that the alien has a credible fear, the alien is placed in removal proceedings under 8 U.S.C. § 1229a, during which the alien may apply for asylum defensively. *See* 8 C.F.R. §1208.30(g)(2)(iv)(B). If the asylum officer, the supervisory asylum officer, and (if review is sought) the IJ finds that the alien lacks a credible fear, the statute provides that the alien shall be ordered "removed from the United States without further hearing or review." 8 U.S.C. § 1225(b)(1)(B)(iii)(I).

An alien in expedited removal proceedings who claims a credible fear of persecution "shall be detained for further consideration of the application for asylum." *Id*. § 1225(b)(1)(B)(ii); *see also id*. § 1225(b)(1)(B)(iii)(IV) ("Any alien subject to the procedures under this clause shall be detained pending a final determination of credible fear of persecution and, if found not to have such a fear, until removed."). An alien detained pending a credible fear interview, however, may be released from DHS custody pursuant to 8 U.S.C. § 1182(d)(5). 8 C.F.R. § 235.3(b)(4)(ii); *Jennings v. Rodriguez*, 583 U.S. 281, 300 (2018) ("[T]he Attorney General may 'for urgent humanitarian reasons or significant public benefit'

temporarily parole aliens detained under §§ 1225(b)(1) and (b)(2)." (quoting 8 U.S.C.

§ 1182(d)(5)(A))).

## III.    FACTUAL BACKGROUND

U.S. Customs and Border Patrol apprehended Plaintiff on July 21, 2021 when

he crossed the international boundary between the United States and Mexico—

approximately one mile northwest of the San Luis, Arizona port of entry—without

authorization or documentation. Ex. A, Form I-213, Record of Deportable Alien.[5]

When apprehended, Plaintiff claimed fear of persecution or torture if returned to his

native country of Nicaragua. *Id.* On July 23, 2021, Plaintiff was deemed

inadmissible to the United States under section 212(a)(7)(A)(i)(II) of the INA and

was placed in expedited removal proceedings. Ex. B, Form I-860, Notice and Order

of Expedited Removal; Ex. C, Form I-296, Notice to Alien Ordered

Removed/Departure Verification; Ex. D, Record of Sworn Statement; Ex. E, Jurat to

Record of Sworn Statement.

Even though Border Patrol placed Plaintiff in expedited removal, he

submitted an affirmative asylum application to USCIS on April 21, 2022. ECF No.

---

[5]    When Plaintiff was apprehended, the United States was experiencing an
extremely high rate of unlawful alien border crossing at the southwest border with
646,800 encounters in 2020; 1,956,520 in 2021; 2,766,580 in 2022; 3,201,140 in
2023, and 2,901,140 in 2024. *See* Office of Homeland Security Statistics, CBP
Encounters, available at https://ohss.dhs.gov/khsm/cbp-encounters (last accessed
October 7, 2025). During that same time, the capacity of Immigration and Customs
Enforcement (ICE) to detain aliens apprehend while illegally crossing the border
was 182,870 in 2020; 211,450 in 2021; 311,580 in 2022, 273,220 in 2023; and
277,910 in 2024. *See* Office of Homeland Security Statistics, CBP Encounters,
available at https://ohss.dhs.gov/khsm/ice-detentions (last accessed October 7,
2025).

10-2 at 19 (Form I-797C, Notice of Receipt of I-589 Application for Asylum and for Withholding of Removal). On June 17, 2025, U.S. Citizenship and Immigration Services (USCIS) dismissed Plaintiff's affirmative asylum application because DHS records demonstrated that Plaintiff was apprehended by Border Patrol and placed in expedited removal. ECF No. 10-2 at 5 (USCIS Notice of Dismissal of Form I-589).

On September 23, 2025, Plaintiff filed a complaint in this action, which sought, *inter alia*, a declaration that the dismissal of his asylum application was unlawful, an order that USCIS adjudicate Plaintiff's asylum application, and an order enjoining DHS and ICE from detaining or removing Plaintiff until his asylum application is adjudicated. *See* ECF No. 1. On October 2, 2025, Plaintiff filed a motion for preliminary injunction seeking the same relief as the complaint—namely an order that (1) USCIS reinstate Plaintiff's affirmative asylum application and (2) the Defendants be enjoined from arresting, detaining, or removing Plaintiff pending the resolution of this case. ECF Nos. 10, 10-1. On October 6, 2025, Plaintiff filed a motion for a temporary restraining order, incorporating the motion for preliminary injunction by reference. ECF No. 15. The Court granted a temporary restraining order that same day. ECF No. 16.

## IV.    LEGAL ARGUMENT

Preliminary injunctive relief is an extraordinary remedy that should be granted only in limited circumstances. *Kos Pharms., Inc. v. Andrx Corp.*, 369 F.3d 700. 708 (3d Cir. 2004). The purpose of a preliminary injunction "is merely to preserve the relative positions of the parties until a trial on the merits can be held."

*Starbucks Corp. v. McKinney*, 144 S. Ct. 1570, 1576 (2024) (quoting *Univ. of Tex. V. Camenisch*, 451 U.S. 390, 395 (1981)). To obtain injunctive relief, Plaintiff is required to establish that (1) he is likely to succeed on the merits, (2) denying the injunction will result in irreparable harm, (3) granting the injunction will not result in greater harm to the Defendants, and (4) the injunction is in the public interest. *Watchung Spring Water Co. v. Nestle Waters N. Am. Inc.*, No. 14-04984, 2014 U.S. Dist. LEXIS 151178, at *2 (D.N.J. Oct. 23, 2014) (citing *Novartis Consumer Health, Inc. v. Johnson & Johnson-Merck Consumer Pharms. Co.*, 290 F.3d 578, 596 (3d Cir. 2002)). Plaintiff must produce "evidence sufficient to convince the district court that all four factors favor preliminary relief." *N.J. Hosp. Ass'n v. Waldman*, 73 F.3d 509, 512 (3d Cir. 1995) (quoting *AT&T v. Winback & Conserve Prog. Inc.*, 42 F.3d 1421, 1427 (3d Cir. 1994)).

"A court will consider all four factors, but the first two are essential." *New Jersey Deer Control, LLC v. EN Garde Deer Def. LLC*, No. CV 24-5587, 2024 WL 2818277, at *3 (D.N.J. June 3, 2024)*; accord. *Nken v. Holder*, 556 U.S. 418, 434 (2009) (the first two factors are "most critical"). If these "gateway factors" are present, then the court balances all four factors. *Reilly v. City of Harrisburg*, 858 F.3d 173, 179 (3d Cir. 2017). One of the objectives of this analysis is to maintain the status quo - i.e., "the last, peaceable, noncontested status of the parties." *Opticians Ass'n of Am. v. Indep. Opticians of Am.*, 920 F.2d 187, 197 (3d. Cir. 1990). "A party's failure to establish any element in its favor renders a preliminary injunction inappropriate." *Ace Am. Ins. Co. v. Wachovia Ins. Agency Inc.*, 306 F. App'x 727,

730-31 (3d Cir. 2009) (citing *Nutrasweet Co. v. Vit-Mar Enters., Inc.*, 176 F.3d 151, 153 (3d Cir. 1999)). Here, because Plaintiff is unlikely to succeed on the merits of his claims, a preliminary injunction is inappropriate. Indeed, Plaintiff's claims are based on an incorrect premise – that he was not in expedited removal proceedings before USCIS dismissed his asylum application.

### A.    Plaintiff is unlikely to succeed on the merits on any of his claims.

Count I of Plaintiff's complaint claims that Defendants violated the Immigration Nationalities Act (INA), 8 U.S.C. § 1158(a)(1), when USCIS dismissed his affirmative asylum application. In Counts II through V, Plaintiff asserts various violations of the Administrative Procedures Act. Specifically, Count II alleges that USCIS violated 5 U.S.C. § 706(1) by not adjudicating Plaintiff's affirmative asylum application; Count III asserts that USCIS's dismissal of Plaintiff's application was arbitrary and capricious under 5 U.S.C. § 706(2)(A); Count IV claims that the dismissal of the application is contrary to Plaintiff's right to due process under the Fifth Amendment; and Count V claims that USCIS violated 5 U.S.C. § 706(2)(C) because its dismissal of the application was not in accordance with its regulations. Lastly, Count VI alleges that USCIS violated Plaintiff's right to due process by dismissing his asylum application and refusing to issue a Notice to Appear (NTA).

Plaintiff is unlikely to succeed on the merits of his claims because USCIS's dismissal of his asylum application neither violates the INA, the Administrative Procedures Act, nor due process. Rather, USCIS lacks authority to adjudicate Plaintiff's asylum application because he was (and is) in expedited removal.

### 1.    Section 1252(a)(2)(A) bars judicial review of the placement of an alien in expedited removal.

Challenges to expedited removal orders are jurisdictionally barred by 8 U.S.C. § 1252(a)(2)(A). That section makes abundantly clear that if jurisdiction exists to review any claim related to an 8 U.S.C. § 1225 expedited removal order, it exists only under subsection (e). 8 U.S.C. § 1252(a)(2)(A) ("matters not subject to judicial review" include "any individual determination" or "any other cause or claim" arising from an "order of removal pursuant to 1225(b)(1), "except as provided in subsection (e)"). Under subsection (e), this Court's jurisdiction is limited to challenges to either the "validity of the system" as a whole; or "three narrow issues, each of which must be raised in habeas corpus proceedings[:]"

   (1)   whether the petitioner is an alien;

   (2)   *whether the petitioner was ordered removed under expedited removal proceedings*; and

   (3)   whether the petitioner can prove by a preponderance of the evidence that he is lawfully admitted/has been granted asylum.

8 U.S.C. § 1252(e)(2) (emphasis added).

"With respect to review of expedited removal orders, . . . the statute could not be much clearer in its intent to restrict [it to certain] habeas review[.]" *Li v. Eddy*, 259 F.3d 1132, 1134-35 (9th Cir. 2001), *opinion vacated as moot*, 324 F.3d 1109 (9th Cir. 2003); *Carriedo-Rosas v. Garland*, 2022 WL 3973924, at *1 (9th Cir. Aug. 31, 2022) (the court lacks "jurisdiction to review collateral attacks on underlying

expedited removal orders absent three narrow exceptions that may be asserted only in a habeas proceeding"); *Castro v. DHS*, 835 F.3d 422 (3d Cir. 2016); *Khan v. Holder*, 608 F.3d 325 (7th Cir. 2010); *Brumme v. I.N.S.*, 275 F.3d 443, 448 (5th Cir. 2001).

Plaintiff tries to avoid the statute's express jurisdiction bar by framing his claim not as an attack on expedited removal but rather as an attack on USCIS's dismissal of his asylum application due to his placement in expedited removal. In *Martinez v. Garland*, No. 8:20-cv-0977, 2021 WL 4060434 (D. Md. Sept. 7, 2021), the Court rejected a similar challenge to 8 U.S.C. § 1252(e)'s jurisdictional bar. In that case, the plaintiff asked the Court to reverse the Government's denial of her visa application because it was based on an unsigned and unserved—and therefore, invalid—order of expedited removal. *Id.* at *2. The Court rejected the plaintiff's attempt to frame the issue as concerning the government's denial of her visa application, recognizing instead that her claims were "nothing more than indirect attacks" on the underlying order of expedited removal. *Id.* at *4. Where a plaintiff uses the immigration "application process as a way to indirectly challenge" the previous "expedited removal order," the challenge "undoubtedly" arises from that order, "and the jurisdictional bar applies." *Id.*

This case is no different. As in *Martinez*, Plaintiff takes issue with USCIS's reliance on the expedited removal order as grounds for dismissing his asylum application. ECF Nos. 1, 10, 10-1, 15. Yet the expedited removal statute's jurisdiction-stripping provisions are express, unambiguous, and clearly foreclose

Plaintiff's attempts at judicial review. Claims that have "nothing to do with the issuance of the actual removal orders" but instead cut to the "adequacy" of the procedures employed do not fall within the jurisdictional bounds of 8 U.S.C. § 1252(e)(2)(B). *Castro v. DHS*, 835 F. 3d 422, 433 (3d Cir. 2016). As in *Castro*, cabining Plaintiff's claims to USCIS's reliance on an allegedly ineffective expedited removal order would "likely eviscerate the clear jurisdiction-limiting provisions of § 1252, for it would allow an alien to challenge in court practically any perceived shortcoming in the procedures prescribed by Congress or employed by the Executive—a result clearly at odds with Congress' intent." *Id.*; *see also Shunaula v. Holder*, 732 F.3d 143, 145-47, fn. 5 (2d Cir. 2013) (district court lacked jurisdiction to review plaintiff's appeal from a current order of removal that was "based entirely on the claimed invalidity of the earlier order of removal entered in expedited proceedings"). Since Plaintiff has not filed a habeas corpus petition, this Court lacks jurisdiction to review the validity of his expedited removal order, including in the context of Plaintiff's challenge to USCIS's asylum dismissal. *Castro*, 835 F.3d at 431.

> **2.    USCIS's dismissal of Plaintiff's affirmative asylum application is not a final agency action under the Administrative Procedures Act.**

Contrary to Plaintiff's assertion, USCIS's dismissal of his asylum application is not a final agency action reviewable under the APA. ECF. No. 10-1 at 16-19.  To be reviewable under the APA, agency action typically must be "final." 5 U.S.C. § 704. "As a general matter, two conditions must be satisfied for agency action to be

13

'final'." *Bennett v. Spear*, 520 U.S. 154, 177–78 (1997). First, "the action must mark the 'consummation' of the agency's decision-making process," and "must not be of a merely tentative or interlocutory nature." *Id*. (citation omitted). Second, "the action must be one by which 'rights or obligations have been determined,' or from which 'legal consequences will flow.'" *Id*. at 178 (citation omitted).

In the immigration context, USCIS decisions subject to further review in removal proceedings are not final agency actions because they are not the consummation of the decision-making process. The Ninth Circuit has held that USCIS's denial of applications to adjust status were not final agency actions because the plaintiffs could renew their applications before the immigration judge who "has unfettered authority to modify or reverse USCIS's denial of the [appellants'] applications, regardless of USCIS's prior determination." *Cabaccang v. USCIS*, 627 F.3d 1313, 1316 (9th Cir. 2010).

Courts have repeatedly reached the same conclusion for challenges to USCIS decisions involving asylum. In *Dhakal v. Sessions*, 895 F.3d 532 (7th Cir. 2018), an alien contested USCIS' denial of his affirmative asylum application. In holding USCIS's decision was nonfinal, the Seventh Circuit explained that Congress created a "systematic scheme" for processing asylum claims. *Id*. at 539. Under that scheme, once removal proceedings commence, the alien may (re)assert asylum as a defense, which will be reviewed *de novo* by the immigration judge and the Board of Immigration Appeals. *Id*. at 537, 539. As such, denial of an affirmative asylum application is "more like a tentative recommendation than a final and binding

determination." *Id.* at 540; *see also Qureshi v. Holder*, 663 F.3d 778, 781 (5th Cir. 2011) (holding USCIS's termination of asylum status is nonfinal); *Jama v. USCIS*, 962 F. Supp. 2d 939, 962 (N.D. Ohio 2013), *aff'd sub nom. Jama v. Dep't of Homeland Sec.*, 760 F.3d 490 (6th Cir. 2014) (holding USCIS's termination of refugee status is nonfinal).

USCIS's dismissal of Plaintiff's affirmative asylum application likewise fails for lack of final agency action because under the expedited removal process established by Congress, Plaintiff can still seek asylum by establishing a credible fear of persecution.

**B.    Plaintiff fails to support his claim that USCIS's dismissal of his asylum application was arbitrary and capricious or in violation of law.**

Plaintiff claims that USCIS's dismissal of his asylum application—based on an expedited removal order—was arbitrary and capricious and in violation of the INA and Due Process Clause of the Fifth and Fourteenth Amendment. ECF Nos. 10; 10-1 at 16-21; 15. However, the APA's arbitrary and capricious standard is highly deferential. An agency violates the standard "only when the record plainly demonstrates that [the agency] made a clear error in judgment." *Tri-Valley CAREs v. U.S. Dep't of Energy*, 671 F.3d 1113, 1124 (9th Cir. Feb. 7, 2012) (cleaned up); *see also Friends of the Earth v. Hintz*, 800 F.2d 822, 831 (9th Cir. 1986) ("The court may not set aside agency action as arbitrary or capricious unless there is no rational basis for the action."). The party challenging a decision as arbitrary and capricious

bears the burden of proof and persuasion. *Ctr. for Cmty. Action & Env't Just. v. Fed. Aviation Admin.*, 61 F.4th 633, 639–40 (9th Cir. 2023).

As the record demonstrates, DHS issued Plaintiff an expedited removal order on July 23, 2021 pursuant to 8 U.S.C. § 1225(b)(1)(A)(i), shortly after his unlawful entry into the United States. That order remains valid unless and until DHS vacates it or Plaintiff departs the United States. *See* 8 U.S.C. § 1225(b)(1). Nonetheless, Plaintiff contends that he was not in expedited removal because ICE released him from custody on his own recognizance. ECF No. 10-1 at 3-4, 14; ECF No. 10-2 at 7-14 (Form I-220A, Order of Release on Recognizance).

Plaintiff's release under Form I-220A pending a credible fear interview with USCIS—with a check-in requirement with DHS—does not divest DHS of its statutory authority to maintain him in expedited removal. Nor does it convert his 8 U.S.C. § 1225 proceedings into § 1229a proceedings. This remains true even where, as here, the Form I-220A cites 8 U.S.C. § 1226 in connection with its release of an alien subject to 8 U.S.C. § 1225. Even where DHS cites § 1226 in connection with a noncitizen's release, the release is not the type of "lawful entry into this country" that is necessary to "establish[ ] connections" that could form a liberty interest requiring additional process. *Thuraissigiam*, 591 U.S. 103, 106–07 ("While aliens who have established connections in this country have due process rights in deportation proceedings, the Court long ago held that Congress is entitled to set the conditions for an alien's lawful entry into this country and that, as a result, an alien

16

at the threshold of initial entry cannot claim any greater rights under the Due Process Clause.").

The Supreme Court has long held that only "once an alien gains *admission* to our country and begins to develop the ties that go with permanent residence [does] his constitutional status change[]." *Landon v. Plasencia*, 459 U.S. 21, 32 (1982) (emphasis added). Here, Plaintiff was neither admitted nor lawfully present in this country as required by *Landon* and *Thuraissigiam* to claim due process rights beyond what § 1225(b)(1) provides. Plaintiff instead remains an "applicant for admission" who—even if released into the country "for years pending removal" — continues to be "'treated' for due process purposes 'as if stopped at the border.'" *Thuraissigiam*, 591 U.S. at 139–140 (explaining that such aliens remain "on the threshold" of initial entry). Accordingly, Plaintiff remains within the category of noncitizens who are owed only what the statute provides.

In fact, Plaintiff's situation is similar to the alien in *Chaviano v. Bondi*, No. 25-cv-22451, 2025 WL 1744349, at *8 (S.D. Fla. June 23, 2025), where DHS initially released the alien pursuant to a Form I-220A order of release on recognizance and processed him for expedited removal rather than § 1229a proceedings. 2025 WL 1744349, at *1. Notably, the Court held that it lacked jurisdiction to review the petitioner's request to stay the ongoing credible fear proceedings because he was subject to expedited removal. *Id.*, at *8.

In sum, Plaintiff's argument conflates physical release with admission, and the Supreme Court has long recognized that aliens apprehended shortly after

unlawful entry, even if physically present in the interior, remain "in theory of law at the boundary line" until lawfully admitted. *Kaplan v. Tod*, 267 U.S. 228, 230 (1925). That principle governs here where Plaintiff was released from custody but never lawfully admitted into the United States, and he remains an applicant for admission. Plaintiff also remains subject to expedited removal. DHS initiated removal proceedings upon finding in October 2021 upon finding that Plaintiff had entered the United States unlawfully, without having been admitted or paroled, and that he was inadmissible pursuant to 8 U.S.C. § 1182(a)(7). *See* 8 U.S.C. § 1225(b)(1)(iii)(II) (applying he expedited removal provisions to "an alien . . . who has not been admitted or paroled into the United States…" as designated by the Secretary of the Department of Homeland Security).

Critically, DHS never issued Plaintiff an NTA, the jurisdictional document required to commence § 1229a removal proceedings. If Plaintiff was in § 1229a proceedings in immigration court, he could file only a defensive asylum application with an immigration judge who has exclusive jurisdiction over asylum claims made in § 1229a removal proceedings. 8 C.F.R. §208.2(b). In other words, if this Court were to find that ICE had placed plaintiff in § 1229(a) removal proceedings, USCIS would still be required to dismiss his asylum application due to lack of jurisdiction.

Furthermore, USCIS has only initial jurisdiction over affirmative asylum applications. 8 C.F.R. § 208.2(a). Once an alien is subject to expedited removal proceedings, USCIS loses jurisdiction to an adjudicate the affirmative asylum application filed by the alien. Again, that is because under 8 U.S.C. § 1225(b)(1)(B),

Congress mandated that the credible fear process is the sole avenue for Plaintiff to pursue his asylum claim while in expedited removal. USCIS's role in the expedited removal process is limited to making a credible fear determination. 8 C.F.R. § 235.3(b)(4). Plaintiff has identified no authority to permit USCIS to ignore, overrule, or negate the Form I-860, Notice and Order of Expedited Removal issued by CBP, on which USCIS based its dismissal of Plaintiff's asylum application due to lack of jurisdiction. Were the Court to give credence to Plaintiff's claims and order USCIS to reinstate his asylum application, it would be holding that an asylum officer could ignore expedited removal orders in violation of 8 U.S.C. 1225(b)(1)(A)(ii). *Compare* 8 C.F.R. § 235.3(2) (expedited removal orders to be completed by "Immigration Officers") and 8 C.F.R. § 208.30 (granting asylum officers authority to conduct credible fear interviews); 8 C.F.R. § 235.3(b)(4) (asylum officers determine whether aliens subject to expedited removal have a "credible fear of persecution" or torture).

The fact remains that Plaintiff was properly placed into expedited removal proceedings. See Ex. A, Form I-860, Notice and Order of Expedited Removal. When he expressed a fear of return to Nicaragua, his expedited removal order became contingent upon his completing the credible fear interview process. 8 U.S.C. § 1225(b)(1)(B)(V); 8 C.F.R. § 208.30(d), (e). ICE then exercised its discretion to release Plaintiff from detention pending a credible fear interview. *See* 8 C.F.R. § 235.3(b)(4)(ii). Before USCIS scheduled Plaintiff for the required credible fear interview, he affirmatively filed an asylum application with USCIS. ECF No. 10-2

19

at 19. Because his sole avenue to pursue fear-based relief or protection while in expedited removal is the credible fear process, *see* 8 U.S.C. §§ 1225(b)(1)(A)(ii), (b)(1)(B), USCIS correctly determined that the agency lacked jurisdiction to consider Plaintiff's affirmative asylum application because Plaintiff had already been placed in expedited removal. ECF No. 10-2 at 5-6, USCIS Notice of Dismissal of Form I-589 ("Department of Homeland Security (DHS) records indicate that you were apprehended by DHS officials, placed in expedited removal, and issued a Form I-860, Notice and Order of Expedited Removal."). This is exactly the process outlined by Congress.

Plaintiff has failed to present any law or facts that contradict USCIS's determination, and his requested relief would undermine the Executive Branch's constitutional and statutory authority over immigration and the removal of aliens, a severe intrusion into the core Executive function of managing the immigration system. *Arizona v. U.S.*, 567 U.S. 387, 394–96 (2012).

### C.    Plaintiff does not have a due process right to apply for asylum.

Lastly, Plaintiff claims that his due process rights were violated and specifically alleges that dismissal of his affirmative asylum application "risks locking him out of asylum in the United States[,] . . . [and] imposes the immediate risk of detention." ECF No. 10-1 at 7.

To succeed on a due process claim, Plaintiff must establish, first, that "there exists a liberty or property interest of which [he has] been deprived[;]" and second, that the procedures the government provided were constitutionally inadequate.

*Ghadami v. United States Dep't of Homeland Sec.*, 2020 WL 1308376, at \*10 (D.D.C. Mar. 19, 2020).

Plaintiff's due process claims against USCIS necessarily fail because there is "no constitutional right to political asylum itself." *Arabzada v. Donis*, 725 F. Supp. 3d 1, 19 (D.D.C. 2024); *Landon*, 459 U.S. at 32 (the Supreme Court has "long held that an alien seeking initial admission to the United States requests a privilege and has no constitutional rights regarding his application, for the power to admit or exclude aliens is a sovereign prerogative"); *Thuraissigiam*, 591 U.S. at 138-39 (2020) (as to foreigners who have not been legally "admitted into the country[,] the decisions of executive or administrative officers, acting within powers expressly conferred by Congress, are due process of law"); *Legal Assistance for Vietnamese Asylum Seekers v. Dep't. of State, Bureau of Consular Affs.*, 104 F.3d 1349, 1352 (D.C. Cir. 1997) ("[P]laintiffs do not have a substantive right to any particular process for having their applications considered"); *INS v. Cardoza-Fonseca*, 480 U.S. 421, 428 n.6 (1987) ("there is no entitlement to asylum; it is only granted to eligible refugees pursuant to the Attorney General's discretion").

Section 1158(d)(7) also expressly disclaims any substantive or procedural rights under the statute: "Nothing in this subsection shall be construed to create any substantive or procedural right or benefit that is legally enforceable by any party against the United States or its agencies or officers or any other person."

Plaintiff is further unlikely to succeed on the merits of any due process claim because he cannot establish that the government action of which he complains—

USCIS's dismissal of his asylum application—was implemented unfairly. *Daniels v. Williams*, 474 U.S. 327, 331 (1986) ("the Due Process Clause promotes fairness" and "prevent[s] governmental power from being used for purposes of oppression"). Further, even if USCIS erroneously dismissed his asylum application, the expedited removal process to which Plaintiff is subject has constitutionally firm procedural safeguards. The regulations give aliens notice and an opportunity to confront evidence, create a written record, and demonstrate that they are not properly subject to expedited removal. 8 U.S.C. § 1225(b)(1).

An alien, like Plaintiff, who indicates an intent to apply for asylum or expresses a fear of persecution, torture, or of return to his country of origin is entitled to further process before he can be removed to that country,[6] including the right to an interview with an asylum officer, administrative review before an immigration judge, and limited judicial review for habeas corpus proceedings. 8 U.S.C. § 1252(e)(2); 8 C.F.R. §§ 235.3, 1208.30. If an alien demonstrates that he is not properly subject to expedited removal proceedings because of the enumerated reasons, then he is entitled to further proceedings under 8 U.S.C. § 1229a. *See* 8 U.S.C. § 1252(e)(4). Plaintiff therefore has protections to guard against the harm he fears; and, critically, he still has an avenue to apply for asylum.

Prohibiting the Government from proceeding with Plaintiff's expedited removal simply because Plaintiff prefers to affirmatively apply for asylum interferes with the Government's interest in effectively enforcing the expedited removal

---

[6]     8 U.S.C. § 1225(b)(1)(A)(i); 8 C.F.R. § 235.3(b)(4), (5).

statute as drafted by Congress. *See, e.g., Castro v. DHS*, 163 F. Supp. 3d 157, 174 (E.D. Pa. 2016) ("The procedures Petitioners urge—necessitating pleadings, formal court proceedings, evidentiary review, and the like—would make expedited removal of arriving aliens impossible"), *aff'd*, 835 F.3d 422 (3d Cir. 2016). Congress determined that expedited removal is necessary "to expedite the removal from the United States of aliens who indisputably have no authorization to be admitted," H.R. Rep. 104-828 at 209, and to deal with the "crisis at the land border" that involves "hundreds of thousands of illegal aliens" entering each year. H.R. Rep. No. 104-469(I) at 107; *see also id*. at 117 (the "threat of expedited exclusion, which has been considered by Congress since 1993, may also have had a deterrent effect"). At the same time, Congress "provid[ed] an opportunity for such an alien who claims asylum to have the merits of his claim promptly assessed by officers with full professional training in adjudicating asylum claims." H.R. Rep. 104-828 at 209.

Plaintiff attempted to enter the United States between ports of entry and without authorization at a time when millions of others were attempting to do the same, thus overwhelming an overstretched immigration system. Plaintiff was released from custody and was able to live in the United States, pending resolution of his expedited removal proceedings, which negates his complaints that he is being treated unfairly. Congress created the system of expedited removal to address Plaintiff's unlawful attempt to enter the United States and a credible fear process to protect him from possible persecution if removed.

Plaintiff has no constitutionally protected interest in his preferred method of seeking asylum. The expedited removal statute and regulations adequately safeguard Plaintiff's minimal due-process rights to have his asylum claim adjudicated.

## V.    CONCLUSION

For the foregoing reasons, the Court should deny Plaintiff's requested relief and dismiss Plaintiff's motion for preliminary injunction and motion for temporary restraining order.

Respectfully submitted,

DAVID METCALF
United States Attorney

/s/ Gregory David [SRB]
GREGORY B. DAVID
Assistant United States Attorney
Chief, Civil Division

/s/ Anthony St. Joseph
ANTHONY ST. JOSEPH
ISAAC J. JEAN-PIERRE
Assistant United States Attorneys
United States Attorney's Office
Eastern District of Pennsylvania
615 Chestnut Street, Suite 1250
Philadelphia, PA 19106
Phone: (215) 861-8267 (St. Joseph)
            (215) 861-8372 (Jean-Pierre)
Email: Anthony.StJoseph@usdoj.gov
            Isaac.Jean-Pierre@usdoj.gov

Dated: October 10, 2025

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this date, I electronically filed the Response in Opposition to Plaintiff's Motion for Preliminary Injunction and Motion for Temporary Restraining Order via the Court's Case Management/Electronic Case Filing system, thereby making it available for viewing and downloading by all counsel of record.

Dated: October 10, 2025               /s/ Anthony St. Joseph
                                      ANTHONY ST. JOSEPH
                                      Assistant United States Attorney