# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| M- L- Z-<br><br>v.<br><br>**KRISTI NOEM** *in her official capacity as Secretary, U.S. Department of Homeland Security*, **et al.** | CIVIL ACTION<br><br>NO. 25-5479 |

### MEMORANDUM

**Baylson, J.**                                                                                                    **December 2, 2025**

When this case was first filed, the Court scheduled a on the record telephone conversation with Counsel for Plaintiff and the Government.  See ECF 14.  The Court inquired whether Plaintiff had any criminal record in his country of origin or the United States, and both Counsel for Plaintiff and the Government stipulated that Plaintiff had never been convicted of any crime.  See id.  With this fact undisputed, the Court *sua sponte* entered a temporary restraining order ("TRO") that Plaintiff could not be arrested, detained, or deported pending further order of the Court.  See ECF 16; ECF 22.  This was necessary because of numerous undisputed news accounts that government agents, whether police, ICE, or military, were arresting and detaining individuals without any probable cause or knowledge that they had committed any crime, but their appearance suggested they may not be native-born United States citizens.  This Court then held an evidentiary hearing at which Plaintiff testified to his background and the circumstances of his arriving in the United States.  See ECF 21.

Although Plaintiff crossed the border from Mexico without specific permission to enter the United States, he followed thousands of individuals who had similarly entered the United

States, without any impediment, which was the policy of the prior administration.[1]  As the evidence record showed, he did not speak English, but his interview was translated into and transcribed in English, and the narration was in favor of his eventually being granted asylum in the United States, as was then the practice.  Plaintiff lived in Philadelphia with his family for several years before filing this action, which was warranted because he was notified that his pending asylum application was dismissed because he was in "expedited removal" proceedings, a term that is defined by statute.  See ECF 1; ECF 10; 8 U.S.C. § 1225.

Whether an undocumented individual can be removed depends on several factors, in which government agencies have an important role to play under several complex, statutory provisions that are difficult to summarize in any clear simplified language.  However, those statutes are 100% civil proceedings.

Here, the Complaint alleged that Plaintiff was not properly considered as being in "expedited removal" and Plaintiff testified credibly to the circumstances which led this Court to agree that Plaintiff was improperly characterized as being in "expedited removal."  See ECF 1; ECF 21.  The Court encouraged Counsel to arrive at a settlement of this case that would not have resulted in any "expedited removal."  See ECF 21.  Counsel agreed to meet and confer and developed a stipulation of settlement, which was the subject of another on-the-record telephone conference on November 19, 2025.  ECF 27; ECF 29.  At that time, the Court advised Counsel that because the TRO was still in effect, the Court was not going to approve the stipulation of settlement because the final clause appeared to give discretion to ICE to detain Plaintiff, which

---

[1] It is important to note that the commonly used phrase, illegal immigrant, is a misnomer.  Individuals who cross into the United States without permission are often referred to as illegal immigrants, but this is not a crime.  They have simply crossed into the United States without advance permission.  Congress has never made this a crime.  Further, the commonly used phrase "undocumented immigrant" does not warrant any conclusion that the individual is committing a crime by remaining in the United States.

2

would have been contrary to the TRO.  See ECF 29.  The Court suggested Counsel revise the agreement so that the provisions of the TRO would be respected.  See id.

Other judges in this District have recently dealt with the detention of undocumented individuals in immigration proceedings.  In N- N- v. McShane, No. CV 25-5494, 2025 WL 3143594, at *1 (E.D. Pa. Nov. 10, 2025), Petitioner filed a habeas petition under 28 U.S.C. § 2241 ("§ 2241"), alleging that ICE did not have the authority under the Immigration and Nationality Act ("INA") to impose added conditions to an immigration judge's order releasing Petitioner.  There, Petitioner was detained by ICE after being arrested and charged with misdemeanor simple assault and summary harassment.  Id.  An immigration judge held a custody redetermination hearing and granted Petitioner's release on a $3,000 bond, finding that Petitioner was not a danger to the community or a flight risk.  Id.  However, ICE subsequently required Petitioner to wear an ankle monitor.  Id.  Judge Scott found that ICE's imposition of added conditions violated due process and the Accardi doctrine, as ICE failed to follow its binding regulations.  Id. at *4.  Accordingly, Judge Scott granted Petitioner's habeas petition[2] and ordered the Government to remove any condition that went beyond the immigration judge's order.  Id. at *1.

---

[2] The Court notes that if Plaintiff is detained and is not given a bond hearing and/or believes the detention is illegal or unreasonably prolonged, Plaintiff can file a habeas petition under 28 U.S.C. § 2241 challenging the fact of his detention and the authority by which he is detained.  See Reno v. Flores, 507 U.S. 292, 306 (1993) ("It is well established that the Fifth Amendment entitles aliens to due process of law in deportation proceedings."); Lopez Benitez v. Francis, No. 25 CIV. 5937 (DEH), 2025 WL 2371588 (S.D.N.Y. Aug. 13, 2025) (granting § 2241 petition and ordering alien to be released from custody after alien was detained following a scheduled immigration court proceeding); see also Toure v. Hott, 458 F. Supp. 3d 387, 397–98 (E.D. Va. 2020) (finding § 2241 unavailable to plaintiffs because they were challenging the conditions of their confinement, not the constitutional sufficiency of their confinement).  Another avenue if Plaintiff is detained is a motion for preliminary injunction and TRO.  See Valencia Zapata v. Kaiser, No. 25-CV-07492-RFL, 2025 WL 2741654, at *14 (N.D. Cal. Sept. 26, 2025) (granting preliminary injunction prohibiting the Government from re-detaining aliens without notice and a pre-deprivation hearing determining that the aliens are a flight risk or a danger to the community).

Furthermore, in <u>Cantu-Cortes v. O'Neill</u>, No. 25-CV-6338, 2025 WL 3171639, at *1 (E.D. Pa. Nov. 13, 2025) (Kenney, J.), Petitioner filed a habeas petition under § 2241, arguing that his mandatory detention by ICE under 8 U.S.C. § 1225(b)(2) violated the laws of the United States and his Fifth Amendment Due Process rights.  Judge Kenney found that Petitioner was detained pursuant to 8 U.S.C. § 1226(a), not § 1225(b)(2), and Petitioner's detention violated the laws of the United States and due process.  <u>Id.</u> at *1–2.  Judge Kenney ordered the Government to provide Petitioner with a bond hearing under § 1226(a) within seven (7) days and ordered that if the Government did not provide Petitioner with a hearing within that time, Petitioner must be immediately released from detention while he awaits his bond hearing.  <u>Id.</u> at *2.

Similarly, in <u>Kashranov v. Jamison</u>, No. 2:25-CV-05555-JDW, 2025 WL 3188399, at *2 (E.D. Pa. Nov. 14, 2025) (Wolson, J.), Petitioner was arrested while attending a routine ICE appointment in Philadelphia and was denied a custody redetermination hearing pursuant to § 1225(b)(2) and <u>Matter of Yajure Hurtado</u>, 29 I&N 216 (BIA 2025).  Petitioner filed a habeas petition under § 2241, alleging his mandatory detention was in violation of due process, the INA, and the Administrative Procedure Act.  <u>Id.</u>  Judge Wolson likewise found that Petitioner was detained pursuant to § 1226(a), not § 1225(b)(2), and Petitioner's mandatory detention without a bond hearing violated the INA and the Fifth Amendment's Due Process Clause.  <u>Id.</u> at *5–8.

Recently, in <u>Demirel v. Federal Detention Center Philadelphia</u>, No. 25-5488, 2025 WL 3218243, at *1 (E.D. Pa. Nov. 18, 2025) (Diamond, J.), Petitioner was detained by ICE after he was arrested for DUI.  Petitioner then filed a habeas petition under § 2241, alleging violations of the INA, the Administrative Procedure Act, and due process.  <u>Id.</u>  Judge Diamond found that the Government detained Petitioner pursuant to § 1226(a) and ordered the Government to provide Petitioner a bond hearing before an Immigration Judge.  <u>Id.</u> at *5.  Judge Diamond reviewed

4

nearly 300 other District Court opinions dealing with immigration issues, and only six (6) out of 288 judges had upheld the Government's interpretation of the INA that all non-citizens in this country illegally are subject to mandatory detention under § 1225(b).[3]

The undersigned disagrees with this small minority of District Judges and will follow the rulings of the strong majority of about 300 other District Judges.[4]  There is no appellate decision on this topic.  An appropriate order has already been entered.

**BY THE COURT:**

/s/ Michael M. Baylson

**MICHAEL M. BAYLSON, J.**

\\adu.dcn\paed\PHL-DATA\Judge_Baylson\CIVIL 25\25-5479 Z v Noem\25cv5479 memorandum v.3.docx

---

[3] See also Diallo v. O'Neill, No. CV 25-6358, 2025 WL 3298003 (E.D. Pa. Nov. 26, 2025) (Savage, J.) (granting habeas petition as Petitioner's detention without a bond hearing violated § 1226(a)); Centeno Ibarra v. Warden of the Federal Detention Center Philadelphia, No. CV 25-6312, 2025 WL 3294726 (E.D. Pa. Nov. 25, 2025) (Rufe, J.) (similar); Patel v. McShane, No. CV 25-5975, 2025 WL 3241212 (E.D. Pa. Nov. 20, 2025) (Brody, J.) (similar); Morocho v. Jamison, No. 5:25-CV-05930-JMG, 2025 WL 3296300 (E.D. Pa. Nov. 26, 2025) (Gallagher, J.) (similar); Flores Obando v. Bondi, No. 25-6474, 2025 WL 3452047 (E.D. Pa. Dec. 1, 2025) (Brody, J.) (similar).

[4] The Court notes that if an undocumented individual has been convicted of a crime either before entering the United States, or after entry, a different set of procedures may apply, and the Government has more legal ability to "remove" ("deportation") of that individual.  This includes the recently enacted Laken Riley Act, see Pub. L. 119–1, 139 Stat. 3 (2025), which expanded mandatory detention under 8 U.S.C. § 1226(c).  The Laken Riley Act added provisions to 8 U.S.C. § 1226(c) and provides that any undocumented individual who is "is charged with, is arrested for, is convicted of, admits having committed, or admits committing acts which constitute the essential elements of any burglary, theft, larceny, shoplifting, or assault of a law enforcement officer offense, or any crime that results in death or serious bodily injury to another person," must be detained without bail during the individual's immigration proceedings.  See 8 U.S.C. § 1226(c)(1)(E).

However, that does not apply in the present case because Plaintiff has never been charged nor convicted of a crime. See ECF 1; ECF 10-1; ECF 14.  Whether Plaintiff eventually gets asylum is not specifically within this Court's power, but the decision as to his remaining free of arrest, detention, or removal is within this Court's power and will be exercised in favor of Plaintiff until there are good grounds otherwise.